**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| | |
| vs. | Case No. 16-10040-01-EFM |
| | |
| MAXIMO CORRAL-GARCIA, | |
| *Defendant.* | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant's Objection Number 1 to the Presentence Investigation Report ("PSR") (Doc. 18) prepared in this case. Defendant Maximo Corral-Garcia objects to the 16-level enhancement predicated on a conviction for a "crime of violence" as stated in Paragraph 20 of the PSR. The Court has reviewed the parties' briefs and heard the parties' oral arguments at the sentencing hearing held on April 21, 2017. At the hearing, the Court overruled Corral-Garcia's objection. The purpose of this memorandum is to memorialize the ruling made by the Court during that hearing.

## I.      Factual and Procedural Background

On July 11, 2016, Defendant Maximo Corral-Garcia entered a plea of guilty to aggravated illegal reentry, in violation of 8 U.S.C. § 1326(a) & (b). Before Corral-Garcia's sentencing, the U.S. Probation Office prepared a PSR using the 2015 Guidelines Manual. The

PSR calculated Williams's base offense level as eight pursuant to U.S.S.G. § 2L1.2(a). Corral-Garcia then received a 16-point enhancement because he "has a prior conviction for a crime of violence, Aggravated Assault (2 Counts), in Wyandotte County, Kansas District Court."[1]

The PSR reflects that Corral-Garcia was convicted of two counts of aggravated assault on July 19, 2007. The PSR provides:

> The information charges that on the above date, the defendant unlawfully and intentionally placed another person, to-wit: [Victim 1], in a reasonable apprehension of immediate bodily harm, committed with a deadly weapon, to-wit: shotgun (Count 1); and that on the same date, the defendant unlawfully and intentionally placed another person, to-wit: [Victim 2], in a reasonable apprehension of immediate bodily harm, committed with a deadly weapon, to-wit: shotgun (Count 2). The journal entry of judgment reflects the defendant was convicted of a person felony committed with a firearm.

Corral-Garcia was sentenced to 18 months total custody on November 9, 2007. On September 18, 2009, he was deported to Mexico.

Corral-Garcia objected to the 16-point enhancement under U.S.S.G. § 2L1.2(a), arguing that the aggravated assault conviction does not qualify as a "crime of violence," and therefore the enhancement should only be four or eight points.[2] He made two arguments in support of this proposition. First, he argued that "the aggravated assault statute asks whether the defendant caused or threatened bodily harm, not whether the defendant used or threatened force." According to Corral-Garcia, Tenth Circuit precedent "directs that a statute focused on harm does not have, as an element, the use or threat of physical force." Second, he argued that the statute

---

[1] *See* U.S.S.G. § 2L1.2(b)(1)(A)(ii) (2015) ("Apply the Greatest: If the defendant previously was deported, or unlawfully remained in the United States, after—(A) a conviction for a felon that is . . . (ii) a crime of violence . . . . increase by 16 levels if the conviction receives criminal history points under Chapter Four . . . .").

[2] *See* U.S.S.G. § 2L1.2(b)(1)(C) (2015) ("Apply the Greatest: If the defendant previously was deported, or unlawfully remained in the United States, after—(C) a conviction for an aggravated felony, increase by 8 levels"); U.S.S.G. § 2L1.2(b)(1)(D) (2015) ("Apply the Greatest: If the defendant previously was deported, or unlawfully remained in the United States, after—(D) a conviction for any other felony, increase by 4 levels.").

only requires proof that the defendant threatened physical contact with a dangerous weapon. "While the statute says 'bodily harm,' it means nothing more than physical contact."

The Government argued in response that the proper inquiry is not whether the aggravated assault statute has as an element the use or threat of physical force. Rather, aggravated assault can automatically qualify as a crime of violence because it is one of the enumerated offenses in the Guidelines Commentary. The proper inquiry, then, is whether the Kansas aggravated assault statute meets the generic definition of "aggravated assault." The Government then argued that Corral-Garcia was charged with, pleaded guilty to, and was convicted of an offense meeting the generic definition of "aggravated assault" and thus the 16-level increase was correctly applied.

## II. Discussion

In the 2015 Guidelines Manual, § 2L1.2(b)(1)(A)(ii) mandates a 16-level increase in the Guidelines calculation if the defendant "previously was deported, or unlawfully remained in the United States, after a conviction for a felony that is . . . a crime of violence." However, § 2L1.2 does not define the term "crime of violence." The Court's inquiry is therefore guided by the definition of "crime of violence" provided in the commentary accompanying § 2L1.2.[3] The phrase "crime of violence," as defined in Application Note 1 (B)(iii), encompasses two distinct categories: one broadly defined to include any offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another" ("elements clause"). The other constituted by specifically enumerated generic offenses, including, as relevant here, "aggravated assault" ("enumerated offense clause").[4]

---

[3] *United States v. Torres-Ruiz*, 387 F.3d 1179, 1181 (10th Cir. 2004) ("Commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.").

[4] U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii) (2015).

"In determining whether a prior conviction is a crime of violence, courts employ a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions."[5]  "If the statute is ambiguous, however, or broad enough to encompass both violent and nonviolent crimes, a court can look beyond the statute to certain records of the prior proceeding, such as to charging documents, the judgment, and the terms of a plea agreement" to determine whether the prior conviction warrants an enhancement.[6] This approach is known as the modified categorical approach.[7]  "Its proper scope depends on whether the prior conviction is evaluated as a crime of violence under the Guideline's 'as an element' language or the list of enumerated offenses."[8]  If the conviction is evaluated under the elements clause, the modified categorical approach has a narrow application; judicial records may be consulted "only 'to determine which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face.' "[9]  But if the conviction is evaluated as an enumerated offense, the modified categorical approach has a broader application; "a sentencing court may look beyond the face of the statute of conviction" and "ascertain whether the jury necessarily had to find, or the defendant necessarily admitted, 'facts that would also satisfy the definition' " of an enumerated offense.[10]

---

[5] *United States v. Antonio-Agusta*, 672 F.3d 1209, 1212 (10th Cir. 2012) (internal quotation marks omitted).

[6] *Id.* (internal quotation marks omitted).

[7] *Id.*

[8] *United States v. Martinez-Zamaripa*, 680 F.3d 1221, 1223 (10th Cir. 2012) (citing *United States v. Venzor-Granillo*, 668 F.3d 1224, 1228–30 (10th Cir. 2012)).

[9] *Venzor-Granillo*, 668 F.3d at 1229 (quoting *United States v. Zuniga-Soto*, 527 F.3d 1110, 1121 (10th Cir. 2008)).

[10] *Id.* at 1229–30 (quoting *Zuniga-Soto*, 527 F.3d at 1121).

Here, Corral-Garcia was convicted of two counts of aggravated assault under K.S.A. § 21-3410. At the time of his conviction, the offense was defined as:

> Aggravated assault is assault, as described in K.S.A. 21-3408 and amendments thereto, committed:
>
> > (a) With a deadly weapon
> >
> > (b) while disguised in any manner designed to conceal identity; or
> >
> > (c) with intent to commit any felony.[11]

Kansas defined assault as "intentionally placing another person in reasonable apprehension of immediate bodily harm."[12] As the statute makes clear, a person could commit aggravated assault by committing assault in one of three ways. "The statute thus provides alternative definitions of aggravated assault, some of which may constitute crimes of violence and some of which may not."[13] Accordingly, the Court must employ the modified categorical approach to determine which of these alternative offenses formed the basis of Corral-Garcia's prior conviction.

The information and journal entry of judgment reveal that Corral-Garcia was convicted of aggravated assault "with a deadly weapon" under § 21-3410(a). Now, the Court must determine whether that offense constitutes a "crime of violence" as defined by U.S.S.G. § 2L1.2 Application Note 1(B)(iii). The Court will first evaluate the aggravated assault statute as an enumerated offense. Then the Court will evaluate the offense under the elements clause.

## A.     Enumerated Offense Clause

---

[11] K.S.A. § 21-3410 (2007) (current version at K.S.A. § 21-5412(b)(1)).

[12] K.S.A. § 21-3408 (2007) (current version at K.S.A. § 21-5412(a)).

[13] *United States v. McDaniel*, 2016 WL 5371859, at *3 (D. Kan. 2016) (analyzing the same statute that is in issue here, K.S.A. § 21-3410).

The Court first turns to whether aggravated assault meets the enumerated offense clause of § 2L1.2. Above, the Court applied the modified categorical approach to determine that Corral-Garcia was convicted of aggravated assault with a deadly weapon under K.S.A. § 21-3410. Because the subsection of conviction has been determined, the Court must apply the "categorical approach," looking at the generic version of the offense and not all the variants of the offense.[14] Courts must focus "solely on whether the elements of the crime of conviction sufficiently match the elements of [the generic offense]," while ignoring the exact facts of the case.[15] Thus, a crime qualifies as an enumerated offense if its elements are the same as, or narrower than, those of the generic enumerated offense.[16] If the crime of conviction covers more conduct than the generic offense, then it is not an enumerated offense for purposes of § 2L1.2.[17]

Although aggravated assault is specifically listed as an enumerated offense in Commentary Note 1 to § 2L1.2, Corral-Garcia argued that it is not a crime of violence because Kansas courts interpret the statute much more broadly than generic aggravated assault. The immediate question, then, is whether *all* of the criminal conduct covered by the Kansas aggravated assault statute falls within the scope of the generic offense of aggravated assault.[18] If so, the Court "may summarily conclude under the categorical approach that the enhancement was properly applied."[19] The dispositive point is whether the Kansas aggravated assault statute

---

[14] *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

[15] *Id.*

[16] *See id.*

[17] *See id.*

[18] *Martinez-Zamaripa*, 680 F.3d at 1224.

[19] *Id.*

"criminalizes only activity that qualifies as [generic aggravated assault], and thus meets the definition of a crime of violence [in] U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii)."[20]  In making this comparison, the Court looks to the "generic, contemporary meaning" of the relevant enumerated offense.[21]

According to Tenth Circuit case law, generic aggravated assault is defined as "an offense that has an element either the causing of serious bodily injury or the use of a dangerous weapon."[22]  In formulating this definition, the Tenth Circuit appeared to adopt the elements of aggravated assault as set forth in the Model Penal Code.[23]  The Model Penal Code states that a person is guilty of aggravated assault with a deadly weapon if he "attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon."[24]  Kansas, on the other hand, defines aggravated assault as "intentionally placing another person in reasonable apprehension of immediate bodily harm"[25] "with a deadly weapon."[26]

Corral-Garcia argues that the Kansas statute "fails to square" with the generic definition in three ways: "(1) it does not require proof that a deadly weapon was used, (2) it does not require proof that the defendant caused or threatened bodily injury, and (3) it does not require

---

[20] *United States v. De La Cruz-Garcia*, 590 F.3d 1157, 1160 (10th Cir. 2010) (internal quotation marks omitted).

[21] *United States v. Rivera-Oros*, 590 F.3d 1123, 1126 (10th Cir. 2009) (quoting *Taylor v. United States*, 495 U.S. 575, 598 (1990)).

[22] *United States v. Gastelum-Laurean*, 370 F. App'x 938, 941 (10th Cir. 2010).

[23] *See id.* ("We agree with the parties that the elements under the Arizona statute do not correspond to the generic elements of aggravated assault, which include either causing serious bodily injury or the use of a dangerous weapon.") (citing Model Penal Code § 211.1(2)).

[24] Model Penal Code § 211.1(2)(b).

[25] K.S.A. § 21-3408 (2007) (current version at K.S.A. § 21-5412(a)).

[26] K.S.A. § 21-3410(a) (2007) (current version at K.S.A. §21-5412(b)(1)).

that the defendant 'purposely or knowingly' attempted or caused bodily injury." Because the Court agrees that the statute does not require proof that a deadly weapon was used, the Court need not address his second and third arguments.

The Model Penal Code defines "deadly weapon" as "any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury."[27] Kansas defines "deadly weapon" as "an instrument which, from the manner it is used, is calculated or likely to produce death or serious bodily injury."[28] However, Kansas "has adopted a subjective analysis for determining whether an assault was committed with a deadly weapon."[29] Under this approach, an otherwise harmless object "can be a dangerous weapon if intended by the user to convince the victim that it is a dangerous weapon and the victim reasonably believes it is a dangerous weapon."[30] Accordingly, Kansas courts have held that a black toy pistol,[31] a "solid," three-feet-long walking stick,[32] and gasoline[33] all qualified as a "deadly weapon" because the victim subjectively believed that it was in fact deadly.

---

[27] Model Penal Code § 210.0(4).

[28] Pattern Instructions Kansas—Criminal § 54.310 (2016); see also *State v. Colbert*, 244 Kan. 422, 769 P.2d 1168 (1989).

[29] *State v. Graham*, 27 Kan. App. 2d 603, 6 P.3d 928, 931 (2000).

[30] *State v. Davis*, 227 Kan. 174, 605 P.2d 572, 575 (1980). While the court in *Davis* used the term "dangerous weapon," instead of "deadly weapon," the Kansas Supreme Court has concluded that there is no distinction between the terms deadly weapon and dangerous weapon. *State v. Deutscher*, 225 Kan. 265, 589 P.2d 620, 623–25 (1979).

[31] *State v. Childers*, 16 Kan. App. 2d 605, 830 P.2d 50, 57 (1991) (concluding that a black toy pistol qualified as a deadly weapon when the defendant "intended the victims to believe the gun was a dangerous or deadly weapon, and the victims reasonably believed it to be such a weapon.").

[32] *State v. Poppelreiter*, 2015 WL 2131564, at **2–3 (Kan. Ct. App. 2015) (concluding that "solid," three-feet-long walking stick used to assault a victim qualified as a deadly weapon).

In light of the above, Corral-Garcia argues that "[t]his deeply diluted definition of 'dangerous weapon' fails the generic definition, which requires an actual deadly weapon." The Court agrees. Under the generic definition, the weapon must be "known to be capable of producing death or serious bodily injury." But under Kansas law, a deadly weapon may in fact be incapable of causing bodily harm. In fact, "even a finger in one's coat pocket could be considered a dangerous weapon under the subjective test."[34] While it is possible that a "deadly weapon" as defined generically may in some circumstances be incapable of causing bodily injury, the weapon must be "*known* to be capable of producing death or serious bodily injury." Surely toy pistols, index fingers, or other seemingly benign objects are not "known" to be capable of causing death or serious bodily injury.

The Kansas aggravated assault statute therefore proscribes a broader range of conduct by referring to the term "deadly weapon" in a way that includes instruments that are not "known to be capable of producing death or serious bodily injury." Take for example a defendant who uses a toy gun to threaten a victim, who believes the gun to be real. That defendant would not be convicted of aggravated assault with a deadly weapon under the generic definition, because a toy gun is not "known to be capable" of causing serious injury. Yet in Kansas, a defendant under those same facts would be convicted, because the victim reasonably believed the gun was real.

---

[33] *Graham*, 6 P.3d at 931 (concluding that gasoline qualified as a deadly weapon where the defendant intended to communicate the ability to inflict bodily harm, and the victim reasonably believed that the gasoline could cause eye damage, skin cancer, and other types of bodily harm).

[34] *Childers*, 830 P.2d at 56–57.

Accordingly, the Kansas aggravated assault statute covers more conduct than the generic offense. Thus, it is not an enumerated offense for purposes of § 2L1.2.[35]

## B. Elements Clause

An offense will also qualify as a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person of another."[36] The Supreme Court has defined "physical force" as "*violent* force—i.e., force capable of causing physical pain or injury to another person."[37]

Corral-Garcia contended that the Kansas aggravated assault statute lacks a force element in two respects. First, "Kansas aggravated assault is missing an element that force was used or threatened." "Second, Kansas aggravated assault lacks, as an element, the strong, violent, physical force required" to qualify as a crime of violence.

### 1. Aggravated Assault Necessitates a Threat to Directly Apply Physical, Mechanical Force From the Defendant to the Victim

In support of his first argument, Corral-Garcia relies heavily on *United States v. Perez-Vargas*,[38] in which the Tenth Circuit addressed whether a conviction under Colorado's third-degree assault statute was a crime of violence. The statute provided that third-degree assault occurs when a defendant "knowingly or recklessly causes bodily injury to another person or with

---

[35] *Contra United States v. Olivera-Flores*, 2012 WL 481846 (D. Kan. 2012) (holding that K.S.A. § 21-3410(a)—aggravated assault with a deadly weapon—constituted a crime of violence under the enumerated offense clause of U.S.S.G. § 2L1.2(b)(1)(A)(ii)). The Court disagrees with the outcome reached in *Olivera-Flores*. There, the court did not consider the Kansas subjective "deadly weapon" analysis for aggravated assault, under which a harmless object can qualify as a deadly weapon. When considering the subjective test, the Court must conclude that the Kansas statute covers more conduct than the generic offense, and therefore cannot qualify as a crime of violence under the enumerated offense clause.

[36] U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii) (2015).

[37] *Johnson v. United States*, 559 U.S. 133, 134 (2010) (emphasis in original).

[38] 414 F.3d 1282 (10th Cir. 2005).

criminal negligence he causes bodily injury to another person by means of a deadly weapon."[39]

This language, the court stated, "looks to the consequences of the conduct, however applied,

whereas the Guidelines look to the type of conduct that causes the injury."[40]  Noting that "it is

likely most third degree assaults will involve the use or threatened use of physical force . . . the

language of the statute allows for other possibilities."[41]  The court then provided three such

possibilities: "recklessly shooting a gun in the air to celebrate, intentionally placing a barrier in

front of a car causing an accident, or intentionally exposing someone to hazardous chemicals."[42]

The court then turned to Colorado courts to determine whether the assault statute

"necessarily requires the application of force."   Concluding that there was no case law

definitively holding that the statute required the application or use of force, the court then looked

to the Tenth Circuit and other courts.   The court recited a number of cases in which courts had

previously found that statutes that focused on bodily harm or injury, rather than physical force,

did not constitute crimes of violence.[43]  The court concluded that the Colorado statute suffered

---

[39] *Id.* at 1285.

[40] *Id.*

[41] *Id.* at 1286.

[42] *Id.*

[43] *Id.* at 1286–87 (citing *United States v. Lucio-Lucio*, 347 F.3d 1202, 1206 (10th Cir. 2003); *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003); *United States v. Gracia-Cantu*, 302 F.3d 308 (5th Cir. 2002)).
      In *Lucio-Lucio*, the Tenth Circuit noted that there must be "a distinction between crimes that potentially involve violent conduct and crimes that merely involve the possibility of resulting harm."  *Lucio-Lucio*, 347 F.3d at 1206.  Accordingly, the court concluded that Texas's drunk driving statute was not a crime of violence.  *Id.*  In *Chrzanoski*, the Second Circuit concluded that nothing in the Connecticut third degree assault statute "require[d] the government to prove that force was used in causing the injury."  *Chrzanoski*, 327 F.3d at 193.  Therefore, because "an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission," one who violates Connecticut's third degree assault statute does not necessarily commit a crime of violence.  *Id.* at 195.  And finally, in *Gracia-Cantu*, the Fifth Circuit held that "the statute criminalizing injury to a child, does not require that the perpetrator actually use, attempt to use, or threatn to use *physical force* against a child."  *Id.* (emphasis added).  The court cited to examples of when the statute could be violated without the use of force: leaving a child unattended near a pool, failing to aid children during a

the same infirmities. Accordingly, the court held that the third-degree assault statute was not a crime of violence because it did not incorporate the use or threatened use of physical force as an element.[44]

Corral-Garcia also relies on the Tenth Circuit case *United States v. Rodriguez-Enriquez.*[45] In that case, the court was presented with the issue of "whether non-consensual administration of a drug should be characterized as 'the use of physical force.' "[46] The court wrote:

> Even if we were to agree that drugging involves the use of *force*, we must still decide what is added by the adjective *physical*. It might relate to the consequences of the force, as in the term *deadly force*, which describes force that can cause death; or it might relate to how the force is generated.[47]

In reaching its decision, the court "reject[ed] the view that the word *physical* relates to the effect of the force."[48] "The pertinent phrase in the Guidelines definition is 'use of physical force against the person of another.' "[49] " 'Force against the person of another' connotes force against a physical object."[50] "A 'force' can affect a physical object only by having a *physical* effect on the object."[51] "One cannot distinguish a 'physical force against the person of another' from a

---

kidnapping, failing to remove a child from an abusive caretaker, or failing to provide proper medical care to a child. *Id.* at 312–13. Therefore, the court held that the injury to a child statute was not a crime of violence. *Id.*

[44] *Perez-Vargas*, 414 F.3d at 1287.

[45] 518 F.3d 1191 (10th Cir. 2008).

[46] *Id.* at 1192.

[47] *Id.* at 1193 (emphasis in original).

[48] *Id.* at 1194.

[49] *Id.* at 1194 (quoting U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii)).

[50] *Id.*

[51] *Id.* (internal brackets omitted).

'generic force against the person of another' by looking to the consequences of the force."[52] "Thus, the adjective *physical* must refer to the mechanism by which the force is imparted to the 'person of another.' "[53] This force, the court concluded, must be generated and imparted mechanically.[54]

The court then turned to *Perez-Vargas*. "The example in *Perez-Vargas* most pertinent to the case before us is 'intentionally exposing someone to hazardous chemicals.' "[55] "As suggested by the defendant in that case, we look to 'the means by which the injury occurs (the use of physical force),' not 'the result of defendant's conduct, i.e., bodily injury.' "[56] Accordingly, the court concluded that "injury effected by chemical action on the body (as in poisoning or exposure to hazardous chemicals) should not be described as caused by *physical force*."[57] Because the statute at issue in *Rodriguez-Enriquez* "criminalizes harm caused by the non-consensual administration" of a drug, the statute encompassed conduct that did not involve the use of physical force.[58] Therefore, the court held that assault two (drugging a victim) was not a crime of violence.[59]

---

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.* at 1195 (quoting *Perez-Vargas*, 414 F.3d at 1286).

[56] *Id.* (quoting *Perez-Vargas*, 414 F.3d at 1285).

[57] *Id.* (emphasis in original).

[58] *Id*. ("Although there is no doubt that one could use physical force to drug someone, as by forcing a drink down the victim's throat, drugging by surreptitious means does not involve the use of physical force.").

[59] *Id.*

In sum, a statute must necessitate the direct application of physical, mechanical force from the defendant to the victim (or the threat or attempt to do so) to qualify as a crime of violence. If the statute allows for a defendant to be convicted without directly applying physical, mechanical force from the defendant to the victim, then it is not a crime of violence.

Again, a crime of violence must have "as an element the use, attempted use, or threatened use of *physical force* against the person of another."[60] Physical force, in this context, means that the force on the victim was generated mechanically. For example, "[w]hen someone is struck by a fist, a bat, or a projectile."[61] In those instances, "[k]inetic energy from the fist, bat, or projectile is transferred to the body of the victim."[62] "[I]t is the presence of this mechanical impact that defines when force is physical."[63] Thus, under *Rodriguez-Enriquez*, drugging a victim did not require the use of *physical force* because the harm is caused by chemical action on the victim's body.[64] Additionally, under *Perez-Vargas*, "intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals" did not require the use of physical force.[65]

---

[60] U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii) (emphasis added).

[61] *Rodriguez-Enriquez*, 518 F.3d at 1194.

[62] *Id.*

[63] *Id.*

[64] *Id.* at 1195.

[65] *Perez-Vargas*, 414 F.3d at 1286. The Court notes that the other hypothetical provided in *Perez-Vargas*—recklessly shooting a gun in the air to celebrate—does require the mechanical application of force (pulling of the trigger) in which kinetic energy from the projectile could potentially be transferred to the body of the victim. However, a crime of violence must be one that involves the "use . . . of physical force," and the word "use" requires "a higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004). The Tenth Circuit has clarified that "use" requires a higher degree of intent than recklessness. *United States v. Zuniga-Soto*, 527 F.3d 1110, 1124 (10th Cir. 2008). Recklessly shooting a gun therefore does not involve the "use of force." Thus, this hypothetical illustrates conduct that does not involve the actual, threatened, or attempted "use" of force; it does not illustrate, as is relevant here, the distinction between force and "physical force."

Corral-Garcia contends that *Perez-Vargas* resolves this case. He argues:

> The Colorado third-degree assault statute almost directly mirrors Kansas' aggravated assault statute. Both criminalize the use of a deadly weapon, and the causation (or threat) of bodily injury. But neither "necessarily include the use or threatened use of 'physical force' as required by the Guidelines." A threat to cut another's brake lines with a knife, or poison another's coffee, is a threat to cause bodily injury with a deadly weapon. But, as *Perez-Vargas* recognized, it is not a threat to use force.

Thus, according to Corral-Garcia, the Tenth Circuit has made a clear distinction: statutes that require the application or threat of force are crimes of violence; statutes that focus on whether an injury resulted are not.

However, contrary to his assertion, these propositions are not mutually exclusive. A statute that focuses on whether an injury resulted can still require the use or threatened use of physical force. That is precisely why the court in *Perez-Vargas* did not end its inquiry with the language of the statute. Rather, the court turned to prior court decisions to determine whether the statute did in fact require the application of force.[66] And while *Perez-Vargas* ultimately concluded that the Colorado statute did not require the use or threatened use of physical force, that outcome is not dispositive of the statute at issue here. On numerous occasions the Tenth

---

The other two hypotheticals do illustrate the proposition that "physical force" means that the force on the victim was generated mechanically. Intentionally placing a barrier in front of a car causing an accident does not involve a mechanical impact because the barrier must be at rest. Thus, kinetic energy cannot be transferred from the offender, to the barrier, to the victim. *See Kinetic energy*, Merriam-Webster (2017) (defining "kinetic energy" as "energy associated with motion."). And in *Rodriguez-Enriquez*, the Tenth Circuit stated that intentionally exposing someone to hazardous chemicals does not involve "physical force." *Rodriguez-Enriquez*, 518 F.3d at 1195 ("Nevertheless, we think that the hazardous-chemical example captures the point that we have made above: injury effected by chemical action on the body (as in poisoning or exposure to hazardous chemicals) should not be described as caused by *physical force*.").

[66] *See Perez-Vargas*, 414 F.3d at 1285–86 ("Turning first to the language of the Colorado statute that defines third degree assault, we note that while it is likely most third degree assaults will involve the use or threatened use of physical force . . . the language of the statute allows for other possibilities. . . . Since the language of the statute is broad, we turn to Colorado courts for interpretive assistance. Unfortunately, we have found no Colorado case law definitively holding that the third degree assault statute necessarily requires the application of force.").

Circuit and courts of this District have determined that some statutes focusing on whether an injury resulted still required the use or threatened use of physical force.[67]  In fact, this Court recently held that a statute focusing on whether an injury resulted was a crime of violence under the elements clause.[68]  Therefore, the correct inquiry is not whether the statute *focuses* on whether an injury resulted, but whether one could violate the statute without threatening to apply physical force to the victim.  The Court concludes that the statute requires a threat to apply physical force directly to the victim.

The Court begins with the language of the statute: "intentionally placing another person in reasonable apprehension of immediate bodily harm with a deadly weapon."  Kansas defines "deadly weapon" as "an instrument which, from the manner it is used, is calculated or likely to produce death or serious bodily injury."[69]  Under the subjective analysis for aggravated assault a harmless object can still qualify as a deadly weapon.  However, this will only happen when the user intentionally "convince[s] the victim that it is a dangerous weapon and the victim reasonably believes it is a dangerous weapon."[70]

---

[67] *See, e.g., United States v. Mitchell*, 653 F. App'x 639 (10th Cir. 2016); *United States v. Taylor*, 843 F.3d 1215 (10th Cir. 2016); *United States v. Treto-Martinez*, 421 F.3d 1156 (10th Cir. 2005); *United States v. Ortega-Garcia*, 12 F. App'x 897 (10th Cir. 2001).  *See also United States v. Nicholas*, 2016 WL 300897 (D. Kan. 2016).

[68] *See United States v. Williams*, 2017 WL 1332721, at **8–10 (D. Kan. 2017) (concluding that both aggravated battery offenses listed in K.S.A. § 21-5413(b)(1)(B), "knowingly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted" had as an element the use and threatened use of physical force).

[69] Pattern Instructions Kansas—Criminal § 54.310 (2016); see also *State v. Colbert*, 244 Kan. 422, 769 P.2d 1168 (1989).

[70] *Davis*, 605 P.2d at 575.

Next, Kansas defines "bodily harm" as "any touching of the victim against the victim's will, with physical force, in an intentional, hostile and aggravated manner."[71] Accordingly, the statute proscribes "intentionally placing another person in reasonable apprehension" of an immediate, unwanted touching, done in an intentionally hostile and aggravated manner, with an instrument the victim reasonably believes "is calculated or likely to produce death or serious bodily injury."

Here, the Court concludes that "intentionally placing another person in reasonable apprehension of immediate bodily harm with a deadly weapon" has as an element the threatened use of "physical force." In every circumstance, the statute requires that the defendant make the victim reasonably fear that the defendant will touch them—with a weapon capable of causing serious bodily injury—in a hostile and aggravated manner. In doing so, the defendant is at the very least threatening the use of "physical" or "violent" force—i.e., "force capable of causing physical pain or injury to another person."[72]

Tenth Circuit case law supports this proposition. In *United States v. Treto-Martinez*,[73] the Tenth Circuit held that "physical force is involved when a person intentionally causes physical contact with another person with a deadly weapon."[74] The *threatened* use of physical

---

[71] *State v. Mpofu*, 2015 WL 4460387, at *4 (Kan. Ct. App. 2015) (quoting *State v. Whitaker*, 260 Kan. 85, 93, 917 P.2d 859 (1996)) (internal brackets and quotations omitted).

[72] *Johnson*, 559 U.S. at 134.

[73] 421 F.3d 1156 (10th Cir. 2005).

[74] *Id.* at 1159 ("First, we conclude that physical force is involved when a person intentionally causes physical contact with another person with a deadly weapon. Although not all physical contact performed in a rude, insulting or angry manner would rise to the level of physical force, we conclude that all intentional physical contact with a deadly weapon done in a rude, insulting or angry manner does constitute physical force under [the Guidelines]. Thus, a person who intentionally touches another with a deadly weapon in a 'rude, insulting or angry manner,' uses physical force by means of an instrument calculated or likely to produce bodily injury . . . .").

force, then, must be involved when a person intentionally places another in reasonable apprehension of unwanted physical contact with a deadly weapon.

Second, both courts that have interpreted this exact statute reached this same conclusion. In *United States v. McDaniel*,[75] a court in this District held

> that Kansas aggravated assault incorporates as an element the use, attempted use, or threatened use of physical force. Like the statutes at issue in *Ramon Silva* and *Nicholas*, here aggravated assault requires a defendant to *knowingly* cause "reasonable apprehension of immediate bodily harm" with a deadly weapon. As the court explained in *Ramon Silva*, "even assuming 'one could knowingly discharge a firearm at or in the direction of an individual without actually intending to injure him,' the crime 'still involve[s] the purposeful *threatened* use of physical force against the person of another.' " Unlike the statute at issue in *Perez-Vargas*, here the statute does not allow for an aggravated assault conviction on the basis of reckless or criminally negligent conduct. The Kansas aggravated assault with a deadly weapon statute does not allow for "other possibilities" that cause bodily harm without the use of physical force, such as the reckless discharge of a gun, the use of poison, or the placement of a barrier in the road. Rather, to be convicted under the statute, a defendant must knowingly cause reasonable apprehension of bodily harm with a deadly weapon. Although the statute refers to "reasonable apprehension of bodily harm," the statute necessitates the use or threatened use of physical force to create the apprehension.[76]

Similarly, in *United States v. Price*,[77] the Eighth Circuit Court of Appeals held that K.S.A. § 21-3410(a) was a crime of violence under the elements clause. In reaching this decision, the court noted that the statute "requires that the defendant make the victim reasonably fear immediate physical harm."[78] This Court agrees.

Although a harmless object can still qualify as a deadly weapon in Kansas, this will only happen when the user intentionally "convince[s] the victim that it is a dangerous weapon and the

---

[75] 2016 WL 5371859 (D. Kan. 2016).

[76] *Id.* at *4 (emphasis in original) (internal citations omitted).

[77] 851 F.3d 824 (8th Cir. 2017).

[78] *Id.* at 825.

victim reasonably believes it is a dangerous weapon."[79]   As explained in *McDaniel*, the test "does not allow for a benign object to qualify as a deadly weapon where it is presented as a benign object."[80]   Thus, the Kansas definition of "deadly weapon" "does not remove the element of physical force from the aggravated assault with a deadly weapon statute."[81]   To commit aggravated assault with a deadly weapon in Kansas, a defendant "must threaten the use of physical force such that a reasonable person would apprehend bodily harm."[82]   "While a defendant need not use actual physical force, a defendant must *threaten* to use physical force to commit the offense."[83]

Furthermore, the Court disagrees with Corral-Garcia's application of *Perez-Vargas* and *Rodriguez-Enriquez* to this case.   It is true that the Court must analyze a statute by looking to "the means by which the injury occurs (the use of physical force)," not "the result of defendant's conduct, i.e., bodily injury."[84]   However, a statute that focuses on whether an injury resulted can still require the use or threatened use of physical force.   Accordingly, the proper inquiry under these cases is whether the force on the victim (or threatened use of force) was generated mechanically and applied directly from the defendant to the victim.[85]

---

[79] *Davis*, 605 P.2d at 575.

[80] *McDaniel*, 2016 WL 53171859, at *5.

[81] *Id.*

[82] *Id.*

[83] *Id.* (emphasis in original).

[84] *Rodriguez-Enriquez*, 518 F.3d at 1195 (quoting *Perez-Vargas*, 414 F.3d at 1285).

[85] *See id.* at 1194.

As explained above, poisoning does not require the use of "physical force" because there is no transfer of kinetic energy from the poison to the body of the victim.[86]  But "intentionally placing another person in reasonable apprehension of immediate bodily harm with a deadly weapon" can only be accomplished via the threatened application of mechanical force from the defendant directly to the victim.  This is because the victim must reasonably fear "any touching . . . against the victim's will, *with physical force*, in an intentional, hostile and aggravated manner."[87]

Corral-Garcia contends that under the statute, "[a] threat to cut another's brake lines with a knife, or poison another's coffee, is a threat to cause bodily injury with a deadly weapon." Thus, he reasons, the statute encompasses conduct that does not require the "mechanical impact" as described in *Rodriguez-Enriquez*.  The Court disagrees.

Threatening to cut another's brake lines with a knife would not constitute aggravated assault with a deadly weapon for two reasons.  First, the threat would not create "reasonable apprehension of *immediate* bodily harm."  If the car is parked at the time of the threat, then there is no threat of *immediate* harm.  Second, if the threat is made while the vehicle was moving, then the apprehension would not be *reasonable*—it is not reasonable to believe that a person could quickly maneuver into position to cut the brake lines of a moving vehicle.

Neither would poisoning another's coffee constitute aggravated assault with a deadly weapon either.  The threat would not create apprehension of "bodily harm," which is defined as "any touching of the victim against the victim's will, with physical force, in an intentional,

---

[86] *See id.*

[87] *Mpofu*, 2015 WL 4460387, at *4 (internal brackets and quotations omitted) (emphasis added).

hostile and aggravated manner."[88]  In this scenario, the threat is not to touch the victim *with physical force*.  Just like in *Rodriguez-Enriquez*, "the adjective *physical* must refer to the mechanism by which the force is imparted to the 'person of another.' "[89]  And "injury effected by chemical action on the body (as in poisoning or exposure to hazardous chemicals) should not be described as caused by *physical force*."[90]  Thus, poisoning another's coffee is not conduct proscribed under the Kansas aggravated assault with a deadly weapon statute.  Therefore, *Perez-Vargas* and *Rodriguez-Enriquez* do not control the outcome of this decision.

Thus, the Kansas aggravated assault with a deadly weapon statute requires that the defendant threaten to apply mechanical force directly from the defendant to the victim.

2.  *Aggravated Assault Has as an Element the Threatened use of Strong, Violent, Physical Force*

Finally, Corral-Garcia argues that Kansas aggravated assault lacks, as an element, the strong, violent, physical force required to constitute a crime of violence.  He first contends that "bodily harm" under Kansas law means mere physical contact.  And second, he argues that the "deadly weapon" requirement does not serve as a makeweight for force.

The Court agrees with Corral-Garcia's first proposition—"bodily harm" does mean simple physical contact.  Thus, the aggravated assault statute generally proscribes placing someone in immediate apprehension of being touched with a deadly weapon, albeit in in an intentional, hostile and aggravated manner.[91]  But the Court disagrees with his second

---

[88] *Id.*

[89] *Rodriguez-Enriquez*, 518 F.3d at 1194.

[90] *Id.* (emphasis in original).

[91] *Mpofu*, 2015 WL 4460387, at *4.

contention. "[T]he use of a deadly weapon may transform a lesser degree of force into the necessary 'violent force.' "[92] And in the Tenth Circuit, simple assault and battery statutes that require only "the least touching" qualify as crimes of violence when the touching is accompanied by a deadly weapon.[93] So while the statute only requires placing someone in immediate apprehension of being touched with a deadly weapon, the touching must be done in an intentional, hostile, and aggravated manner. Accordingly, "the manner in which the physical contact with a deadly weapon must occur to violate the Kansas statute clearly has as an element the 'threatened use of physical force.' "[94]

The Court therefore concludes that aggravated assault with a deadly weapon under K.S.A. § 21-3410(a) has as an element the threatened use of physical force and therefore constitutes a crime of violence.

## C.     Corral-Garcia's Sentence Must be Calculated Under the 2016 Guidelines Manual

The PSR was prepared using the 2015 Guidelines Manual. Under the 2015 Manual, the base offense level for 8 U.S.C. § 1326(a) offenses is eight. Because the Court concluded that Corral-Garcia's prior conviction for aggravated assault was a crime of violence, the offense level

---

[92] *United States v. Rede-Mendez*, 680 F.3d 552, 558 (6th Cir. 2012).

[93] *See, e.g.*, *Treto-Martinez*, 421 F.3d at 1159–60 (concluding that a Kansas conviction for aggravated battery had as an element the threatened use of physical force: "Even if the physical contact does not produce bodily injury, the manner in which the physical contact with a deadly weapon must occur to violate the Kansas statute clearly has as an element the 'threatened use of physical force.' "); *United States v. Ramon Silva*, 608 F.3d 663, 672 (10th Cir. 2010) (" '[A]pprehension-causing' aggravated assault . . . creates a commensurate threat of physical force such that the crime qualifies as a violent felony under the ACCA. Purposefully threatening or engaging in menacing conduct toward a victim, with a weapon capable of causing death or great bodily harm, threatens the use of 'force capable of causing physical pain or injury . . . .'"); *see also United States v. Dominguez*, 479 F.3d 345, 349 (5th Cir. 2007) (applying *Treto-Martinez* to conclude that "[a]lthough an intentional touching with a deadly weapon . . . may not in itself cause injury, it could lead to more violent contact, or could at least put the victim on notice of the possibility that the weapon will be used more harshly in the future, thereby constituting a threatened use of force.").

[94] *Treto-Martinez*, 421 F.3d at 1160.

was increased by 16.[95]  This provided for an adjusted offense level of 24.  Corral-Garcia then received a three-level reduction for acceptance of responsibility, resulting in a total offense level of 21.  Based upon a total offense level of 21 and a criminal history category of VI, the guideline imprisonment range under the 2015 Guidelines Manual is 77 to 96 months.

But the 2016 Guidelines Manual, which came into effect on November 1, 2016 incorporated amendments to § 2L1.2.  Under the 2016 Manual, the base offense level for 8 U.S.C. § 1326(a) offenses is still eight.  However, the amendments eliminated the "crime of violence" enhancement.  Under the 2016 Manual, the offense level would be increased by four levels because Corral-Garcia has a prior conviction for a felony that is an illegal re-entry offense.[96]  And because Corral-Garcia was deported for the first time after a conviction for a felony offense for which the sentence imposed was 11 months (possession of cocaine) an addition four levels would be added.[97]  Additionally, after Corral-Garcia was deported from the United States for the first time, he engaged in criminal conduct resulting in a conviction for a felony offense for which the sentence imposed exceeded one year and one month (aggravated assault with a deadly weapon).  This prior conviction would result in a six-level enhancement,[98] bringing the offense level to 22.  With a three-level reduction for acceptance of responsibility,

---

[95] U.S.S.G. § 2L1.2(b)(1)(A)(ii) (2015).

[96] U.S.S.G. § 2L1.2(b)(1)(A) (2016) ("(Apply the Greater) If the defendant committed the instant offense after sustaining—a conviction for a felony that is an illegal reentry offense, increase by 4 levels.").

[97] U.S.S.G. § 2L1.2(b)(2)(D) (2016) ("(Apply the Greatest) If, before the defendant was ordered deported or ordered removed from the United States for the first time, the defendant sustained—a conviction for any other felony offense (other than an illegal reentry offense), increase by 4 levels.").

[98] U.S.S.G. § 2L1.2(b)(3)(C) (2016) ("(Apply the Greatest) If, at any time after the defendant was ordered deported or ordered removed from the United States for the first time, the defendant engaged in criminal conduct resulting in—a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed exceeded one year and one month, increase by 6 levels.").

the total offense level would be 19. Based upon a total offense level of 19 and a criminal history category of VI, the guideline imprisonment range under the 2016 Guidelines Manual is 63 to 78 months.

Section 1B1.11 provides that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced," unless the Guidelines Manual in effect on the sentencing date would violate the *ex post facto* clause of the United States Constitution.[99] At the time of Corral-Garcia's sentencing, the 2016 Guidelines Manual was in effect. Under the 2016 Manual, Corral-Garcia would receive a lesser guideline imprisonment range (63 to 78 months) than under the 2015 Manual (77 to 96 months). Thus, the Court sentenced Corral-Garcia using the 2016 Guidelines Manual.

To be clear, the decision to sentence Corral-Garcia under the 2016 Guidelines Manual did not render Corral-Garcia's objection as moot. Had the Court sustained the objection, then the 2015 Manual would have provided for a lesser sentence calculation than the 2016 Manual. For example, if the Court concluded that the aggravated assault conviction was not a crime of violence, but rather an "aggravated felony," then he would have only received an 8-level enhancement, resulting in an adjusted offense level of 16.[100] And if the Court concluded that the aggravated assault conviction was neither a crime of violence nor an aggravated felony, then he would have only received a 4-level enhancement, resulting in an adjusted offense level of 12.[101]

---

[99] U.S.S.G. § 1B1.11(a), (b) (2016).

[100] *See* U.S.S.G. § 2L1.2(b)(1)(C) (2015) (providing for an 8-level enhancement if the defendant was previously deported after sustaining "a conviction for an aggravated felony.").

[101] *See* U.S.S.G. § 2L1.2(b)(1)(D) (2015) (providing for a 4-level enhancement if the defendant was previously deported after sustaining "a conviction for any other felony."). While Corral-Garcia did argue that the prior conviction did not qualify as an aggravated felony, and was merely a felony, the Court did not reach this issue based on the conclusion that the offense qualified as a crime of violence.

Therefore, Corral-Garcia's objection was not moot, and it was proper to sentence him using the 2016 Guidelines Manual.

### III.    Conclusion

In sum, aggravated assault with a deadly weapon under K.S.A. § 21-3410(a) constitutes a crime of violence.  Intentionally placing another person in reasonable apprehension of immediate bodily harm with a deadly weapon has as an element the threatened use of physical force.  The U.S. Probation Office therefore properly calculated his sentence in the PSR using the 2015 Guidelines Manual.  However, the 2016 Guidelines Manual was in effect at the time of Corral-Garcia's sentencing.  Under the 2016 Manual, Corral-Garcia would receive a lesser guideline imprisonment range (63 to 78 months) than under the 2015 Manual (77 to 96 months).  For these reasons, the Court sentenced Corral-Garcia using the 2016 Guidelines Manual.

IT IS SO ORDERED.

Dated this 24th day of April, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE